JOHN E. DIMON, PLAINTIFF-APPELLANT, v. CHARLES EHRLICH, COUNTY CLERK, AND CHARLES FELLNER, DEPUTY COUNTY CLERK, DEFENDANTS-RESPONDENTS, AND ANDREW SOLTESZ, INTERVENOR-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 2, 1967—Decided October 5, 1967.

84

Before Judges CONFORD, COLLESTER and LABRECQUE.

*Mr. Martin L. Haines* argued the cause for appellant (*Messrs. Dimon, Haines & Bunting,* attorneys).

*Mr. Sanford Soren,* County Solicitor, argued the cause for respondents.

*Mr. Kenneth E. Smith* argued the cause for intervenor.

The opinion of the court was delivered by

CONFORD, S. J. A. D. The trial court after a hearing rejected a complaint by plaintiff, chairman of the Republican County Committee of Burlington County, that the deputy county clerk, who was also chairman of the Democratic County Committee of that county, had failed to comply with *R. S.* 19:14–12 in the procedure employed on September 18, 1967 for drawing party positions on the ballot for the ensuing general election. The draw had resulted in the Democratic Party candidates winning the choice of ballot position. The trial court did not discuss plaintiff's contentions in relation to the question whether there had been adequate compliance with the statute but held in effect that the absence of collusion or prearrangement between the deputy clerk and his assistant in conducting the draw, as testified to, was dispositive of the matter of validity of the draw.

The material portion of the statute reads as follows:

"The manner of drawing the lots shall be as follows: paper cards, of the same size, substance and thickness, with the names of each political party written thereon, shall be placed in a covered box with an aperture in the top large enough to admit a man's hand and to allow the cards to be drawn therefrom. The box shall be well shaken

and turned over to thoroughly intermingle the cards. The county clerk or his deputy shall at his office, draw from the box each card separately without knowledge on his part as to which card he is drawing."

The uncontradicted proofs at the trial, amplified by our own observation of the box here involved, at oral argument, showed the following. The box used is a common type of jury selection box. It is roughly cylindrical in shape, about 18 inches long and 8 inches in diameter, more or less, mounted horizontally on a pedestal. It is not perfectly round, however, but has some eight flat exterior surfaces, some being wider than the others. It can be manually spun either clockwise or counter-clockwise in a vertical plane on a horizontal axis. The box has a small center aperture which can be locked shut when being spun.

On the occasion in question the deputy clerk handed an assistant in the clerk's office two small identical cards, one marked "D" for Democratic Party and one "R" for Republican Party. As found by the trial court from the testimony, she dropped each one, separately, into the aperture from the outside without any prior understanding with anyone as to how the cards were to be deposited. Defendant Fellner, who had not been watching the dropping of the cards, thereupon, in the presence of 35 people from both political parties, spun the box on its horizontal axis, first in one direction, then the other. Aside from the spinning, the box remained motionless on its pedestal on the counter. Another county official, a member of the Republican Party, also spun the box in the same manner. The box was not lifted off the counter or shaken, nor was it turned over. Thereupon Fellner first drew the card marked "D" from the box. He testified he had no prior knowledge as to which card he was drawing.

We have no basis for disagreement with the finding of fact by the trial court that there was no fraud or bad faith in the conduct of this particular draw, but for reasons to be stated that fact is immaterial.

Plaintiff adduced the testimony of a consulting engineer as an expert witness. He performed the following experiment in open court. He inserted the same cards in the box used for the draw, one at each end of it. He then spun the box in both directions as had the deputy clerk. On each of four occasions he was able at request to draw from the box, presumably without looking into the aperture, a specified card. He explained that he was able to do this because the spinning of the box exerted a centrifugal force which tended to press the card against the same side of the box, whether left or right of the aperture, in which it had first been placed. Moreover, there was no force at work to cause the card to "move endwise," *i. e.*, laterally away from the point where placed. On cross-examination he admitted that he would not be able to draw the desired card if he did not know where the cards were placed in the box originally.

At the oral argument this court performed the same experiment, with results similar to those at the trial, even when the cards were placed half-way between the aperture and the respective ends. Only when the cards were placed in close proximity to each other was the effort to draw the desired card unsuccessful.

It is clear to us that the statutory requirements that the "box shall be well shaken and turned over to thoroughly intermingle the cards" is prophylactic in purpose, designed to frustrate any possible effort at fraud in drawing the cards, whether patent or devious. Therefore the mere fact that actual fraudulent intent cannot be proven in a particular case—a difficult endeavor in any such circumstances—is not controlling as to the validity of the draw. Substantial compliance with the statutory directions is nevertheless required to accomplish the protective objective of the Legislature. The courts are generally more willing to enforce significant statutory requirements aimed at insuring honest election practices before an election than to set an election aside for irregularities after it has taken place. See *Wene v. Meyner*, 13 *N. J.* 185, 196 (1953).

■ ■ We are satisfied that the spinning of the jury box in the manner here employed was not the substantial equivalent of the statutory requirements both that the box be "well shaken" and that it be "turned over" so that the cards be "thoroughly intermingle[d]." We think the statute probably contemplates the use of a conventional box, although no particular shape of box is mandatory under the act. However, the shaking of the box plainly means its manual lifting, and, to resort to the pertinent dictionary definition, its agitation with irregular vibratory motion. Shaking the box is calculated to disperse and intermingle the contents at random, no matter where they have been placed in it beforehand. Turning the box over is an additional assurance of such dispersion and intermingling by the force of gravity. The spinning of a cylindrical container, as here, on the contrary, tends to preserve the stability of the position of the cards in their original location in the box and thus militates against the statutory objective of thorough intermingling.

The fact that two people rather than one were actually involved in the here questioned draw procedure is irrelevant. So far as the statutory language and intent are concerned, one person may perform the entire operation. The reliance of the statute for a fair draw is upon the identical physical character of the cards used and upon the thorough shaking and turning over of the box after the cards are placed in it; this, of course, under the implicit assumption that the official will not look into the box when drawing the card from it.

■ We do not agree with the alternative contention of plaintiff that the draw was invalid because of conflict of interest in Fellner's being chairman of the Democratic County Committee. The function of drawing the ballot position card is purely ministerial. The principle of conflict of interests or incompatible offices is therefore not implicated. In any event, either the clerk or the deputy clerk must, under the statute, perform the draw. The clerk is Democratic state committeeman and so would be equally disqualified under plaintiff's argument. But under the principle of necessity,

one or the other must perform this function even were conflict otherwise present. See *Cranberry Lake Quarry Co. v. Johnson,* 95 *N. J. Super.* 495, 521 (*App. Div.* 1967).

The drawing is invalid for failure of substantial compliance with the statute and is herewith set aside. A new draw shall be conducted forthwith, consistent with this opinion. The judgment is reversed without costs. The mandate shall issue forthwith.